## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ETTA GOSS**, as the Personal Representative of the Estate of **JONATHAN WILSON, DECEASED**, **JENA RASCO,** Individually as Mother of **JONATHAN WILSON** and as Next Friend of Minor **A.W.,** and **JOHN WILSON,** Individually as Father of **JONATHAN WILSON**, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | CIVIL ACTION NO. _____ |
| v. | §<br>§ | JURY TRIAL DEMANDED |
| **ELLIS COUNTY, TEXAS, CAPTAIN TERRY OGDEN AND ELLIS COUNTY CORRECTIONAL OFFICERS JOHN/JANE DOES 1-5, AND ELLIS COUNTY MEDICAL STAFF JOHN/JANE DOES 1-5,** | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

**NOW COME** Plaintiffs **ETTA GOSS**, as the Personal Representative of the Estate of Jonathan Wilson, deceased, **JENA RASCO,** Individually as Mother of Jonathan Wilson and as Next Friend of Minor **A.W.**, and **JOHN WILSON,** Individually as Father of Jonathan Wilson, complaining of Defendants, **ELLIS COUNTY, TEXAS, ELLIS COUNTY SHERIFF'S OFFICER TERRY OGDEN, ELLIS COUNTY CORRECTIONAL OFFICERS JOHN/JANE DOES 1-5, and ELLIS COUNTY MEDICAL STAFF JOHN/JANE DOES 1-5, and alleges** as follows:

### I.     NATURE OF THE ACTION

1.1     This is a tragic wrongful death cause of action brought by the Plaintiffs against Defendants, for failure to provide adequate medical care resulting in an inexcusable delay in Jonathan Wilson's

medical needs while incarcerated at the Wayne McCollum Detention Center in Ellis County, Texas.

1.2     Jonathan Wilson was taken into custody at the Ellis County Sheriff Department/Wayne McCollum Detention Center on August 15, 2017 for probation violations related to a family violence. Wilson was sentenced to two years probation.

1.3     From the beginning of Mr. Wilson's incarceration, Mr. Wilson exhibited serious and life-threatening drug withdrawal symptoms that necessitated adequate medical treatment. Defendants were immediately aware of Mr. Wilson's need for immediate medical treatment.  In a flagrant violation of Jonathan Wilson's United States Constitutional rights under 42 U.S.C. § 1983 and the laws of the State of Texas, Defendants owed a duty, but failed, to implement policies, practices and procedures respecting Wilson's constitutional rights to medical treatment.  In fact, Defendants demonstrated a deliberate indifference to Jonathan Wilson's substantial and life-threatening medical needs. On August 19, 2017 at approximately 6:10 a.m., after almost 72 hours of unwarranted and excruciating physical pain and mental anguish, and without being provided the most basic of medical care, Mr. Wilson succumbed to his medical condition and passed away.

1.4     Plaintiffs contend that the Defendants' failure to implement the necessary policies and the implementation of unconstitutional policies deprived him of due process under Fifth and Fourteenth Amendment, constituted cruel and unusual punishment prohibited by the Eight Amendment, and caused him unwarranted and excruciating physical pain and mental anguish, and the exacerbation of his serious and life-threatening medical condition resulting in his premature death.

1.5     Plaintiffs contend that the individual Defendants are not entitled to qualified immunity as their conduct was objectively unreasonable in light of clearly established law at the time of Mr.

Wilson's incarceration. The individual Defendants, through deliberate indifference to the substantial risk of harm to the Mr. Wilson, deprived Mr. Wilson of his clearly established federal constitutional rights, including, but not limited to, the right to reasonably safe and healthful conditions of confinement, the right to be free of severe pan, the right to appropriate medical care and accommodation of his medical condition and a right to be free from cruel and unusual punishment.

1.6     Unfortunately, Defendants violation of Jonathan Wilson's rights resulted in the death of Jonathan Wilson and the injuries sustained by A.W., Jena Rasco and John Wilson under the color of law in violation of their individual rights under the Fifth, Eighth and Fourteenth Amendment of the United States Constitution and in violation of their civil rights pursuant to 42 U.S.C. § 1983 and other constitutional provisions and laws of the State of Texas.

## II.     PARTIES

2.1.    **PLAINTIFF ETTA GOSS** is a person of the full age of majority and a resident of Dallas County, Texas. **ETTA GOSS** sues as the Personal Representative of the Estate of Jonathan Wilson, deceased,

2.2     **PLAINTIFF JENA RASCO** is a resident of Dallas County Texas and was Jonathan Wilson's legal and biological mother.

2.3     **PLAINTIFF A.W.**, a minor acting by and through her next friend, Jena Rasco, is a resident of Dallas County, Texas, and the biological child of Jonathan Wilson.

2.4     **PLAINTIFF JOHN WILSON** is a resident of Dallas County Texas and was Jonathan Wilson's legal and biological father.

2.5     **DEFENDANT ELLIS COUNTY, TEXAS** is a county of the State of Texas. Ellis County funds and operates the Ellis County Sheriff Department/Wayne McCollum Detention Center.

**DEFENDANT ELLIS COUNTY** is responsible for the implementation of the policies, procedures, practices, and customs, as well as the acts and omissions challenged by this complaint. **DEFENDANT ELLIS COUNTY** is also responsible for the ensuring that all of its facilities, including the **WAYNE MCCOLLUM DETENTION CENTER** is in compliance with federal and state law, department or agency policies, rules and regulations and related standards of care. **DEFENDANT ELLIS COUNTY** also employs the Ellis County Correctional Officers identified below, including Captain Terry Ogden, and the Ellis County Medical Staff identified below. **DEFENDANT ELLIS COUNTY** may be served with process by serving the Honorable Todd Little, County Judge at 101 West Main Street, Waxahachie, Ellis County, Texas.

2.6    **DEFENDANT ELLIS COUNTY CORRECTIONAL OFFICERS JOHN/JANE DOES 1-5**, unknown (at this time) individuals who were at all relevant times, employees of and officers with the Ellis County Sheriff's Department.  These individuals may be served with process by serving the Ellis County Judge, Todd Little, at 101 West Main Street, Waxahachie, Ellis County, Texas.

2.7    **DEFENDANT CAPTAIN TERRY OGDEN** is an individual who was at all relevant time, was a Captain of Ellis County Sheriff Department. In that capacity, he was in charge of the jail on a day-to-day basis. **DEFENDANT CAPTAIN TERRY OGDEN** is being sued in his individual capacity. In that capacity, at all relevant times, **DEFENDANT CAPTAIN TERRY OGDEN** was employed by Ellis County and/or Ellis County Sheriff Department. At all times, **DEFENDANT CAPTAIN TERRY OGDEN** was acting under color of law and the policies, practices, and customs of Ellis County as well as within the course and scope of his employment. **DEFENDANT CAPTAIN TERRY OGDEN** may be served at Wayne McCollum Detention Center, 300 South Jackson, Waxahachie, Texas 75165.

## III.   JURISDICTION AND VENUE

3.1    Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent Jonathan Wilson, by constitutional and statutory provisions.

3.2    Venue is proper in this court because the causes of action occurred within the Northern District of Texas, Dallas Division.

## IV.   FACTS

**A.    Jonathan Wilson is arrested for probation violation for a misdemeanor crime.**

4.1    Jonathan Wilson ("Wilson") was nineteen (19) years old when he succumbed to his medical condition and passed away at the hands of Defendants. Wilson was a devoted father and son and very well-liked by his friends and family.

4.2    On Tuesday, August 15, 2017, the day of Wilson's arrest, a series of negligent events at the hands of Defendants would unfold that would seal this young man's fate. Prior to Wilson's arrest, Wilson struggled with narcotics and this was well-known among his friends and family. In fact, at the time of his arrest, Wilson was addicted to methamphetamines. Wilson's addiction to methamphetamines was communicated to Defendants at the time of his booking on August 15, 2017.

4.3    While in the custody of Defendants and soon after dinner on Tuesday, August 15, 2017, Wilson began exhibited serious and life-threatening drug withdrawal symptoms that necessitated adequate medical treatment. Specifically, between 7:00 and 8:00 p.m. on August 15, 2017, Wilson began vomiting his dinner and he started to get diaphoretic and faint, which required him to lay on his bunkbed.

4.4     As the night progressed, Wilson's drug withdrawal symptoms increased and the inmates

recalled Wilson vomiting multiple times throughout the overflow tank. The inmates pleaded with

the guards to send the nurses to check on Wilson; however, the guards and nurses were indifferent

to the inmates' requests to properly treat Wilson and the inmates were told to mind their own

business and let the guards do their job. The guards and nurses further stated that Wilson was "just

coming off of drugs and there was nothing that they could do for him."

4.5     On Wednesday, August 16, 2017, less than 24 hours after Wilson arrived at the jail, Wilson

was continuing to violently vomit and dry-heave when his stomach was purged of food and he was

still diaphoretic and faint and was having problems breathing. The inmates continued to plead with

the guards to send medical help, but again the guards and nurses were indifferent to the inmates'

request to properly treat Wilson.  Wilson's condition continued to decline as each minute passed.

By mid-day Wednesday, Wilson started hallucinating and became very confused. Wilson was

making request to go to his car to get his cigarettes and he was mistaking inmates as his family.

The inmates appreciated Wilson's condition was serious and life-threatening and several inmates

told the guards that Wilson was dying. By this point, the inmates were beyond concerned about

Wilson's health and repeatedly requested the nurses or guards to provide Wilson with medical

care. However, Defendants were still indifferent and still failed to provide adequate treatment.

4.6     On Thursday, August 17, 2017, Wilson's serious and life-threatening drug withdrawal

symptoms continued to escalation, however, he was still denied adequate medical treatment.

4.7     In the evening of Friday, August 18, 2017, Wilson's weakened, dehydrated and

malnourished body could carry on no longer. Wilson was barely coherent and he was cyanotic.

The inmates again pleaded for the guards to provide Wilson with medical care. This time EMS

was called, but it was too late; the damage had been done. Prior to EMS arriving, Wilson's body

PLAINTIFFS' ORIGINAL COMPLAINT                                                                      6

began to expire and he became unresponsive, limp, started having seizures and he lost control of his bladder and bowels.

4.8     In the early morning hours on Saturday, August 19, 2017, at approximately 6:10 a.m., after almost 72 hours of unwarranted and excruciating physical pain and mental anguish, Mr. Wilson succumbed to his medical condition and passed away.

## V.     CAUSES OF ACTION

### A.     Cause of Action against Ellis County under 42 U.S.C. § 1983 for violation of Mr. Wilson's 8th and 14th Amendment Due Process Right to Reasonable Medical Care.

### 1.     Failure to implement medical policy as required by Texas law.

5.1     Ellis County is liable to the Plaintiffs for violating Mr. Wilson's right to reasonable medical care guaranteed by the Eighth and Fourteenth Amendment to the United States Constitution.  Mr. Wilson's condition, upon presentment to the jail and at all times thereafter, required constant medical attention.  Ellis County and its employees knew of Mr. Wilson's medical needs but failed or refused to provide Mr. Wilson with the required care.  Ellis County's failure to provide Mr. Wilson with the required medical care led to, and was the moving force behind, Mr. Wilson's death.

5.2     Texas law requires that all detention facilities, including the Wayne McCollum Detention Center, adopt and implement a written health care policy governing the provisions of medical services to inmates.  *See* 37 Tex. Admin. Code § 273.1 (stating that each detention facility "shall provide medical, mental, and dental services in accordance with the approved health services plan.").  Such a policy must set forth, among other things, "procedures for efficient and prompt care for acute and emergency situations[.]" 37 Tex. Admin. Code § 273.2(3).  Ellis County failed to implement the necessary policies to prevent inadequate and delayed medical treatment to inmates—i.e., Ellis County failed to implement a state-mandated policy to ensure the efficient and

prompt care of acute and emergent injuries.

5.3     Ellis County's failure to implement such policies caused an unconstitutional delay in medical treatment and such delay caused the death of Mr. Wilson.

### 2.     The denial of medical care to Mr. Wilson.

5.4     Consistent with its failure to implement medical policy, Ellis County violated 42 U.S.C. § 1983 when its governmental officials acted or failed to act with subjective deliberate indifference to Mr. Wilson's serious medical needs.  Deliberate indifference exists when the official or officials refuse to treat the Plaintiff, ignore medical complaints, or intentionally provide the incorrect medical treatment.  It was clearly established at the time that an inmate has a constitutionally protected right to be free from a prison official's deliberate indifference to a prisoner's serious medical needs.  *See Easter v. Powell,* 467 F.3d 459, 465 (5th Cir. 2006).

5.5     Ellis County refused to treat Mr. Wilson's severe narcotic withdrawal condition and physical symptoms, even though it knew from the time of his intake that he was suffering, and would continue to suffer, from the serious and ultimately lethal, side effects of drug withdrawal.

5.6     Ellis County's refusal to treat Mr. Wilson and ignoring his repeated pleas for help were acts of subjective deliberate indifference that caused an unconstitutional delay in medical treatment which ultimately caused his death.

### 3.     The failure to train Ellis County Correctional Officers and Medical Staff regarding the need for medical care.

5.7     Defendant Ellis County failed to provide its employees with the proper training required to provide detainees with proper medical treatment.  Ellis County's failure to provide adequate training to its employees regarding the proper medical treatment administered and/or attention given to detainees undergoing drug withdrawal reflects deliberate indifference and reckless and

conscious disregard for the obvious risk that made the violations of Mr. Wilson's constitutional rights, a reasonable probability and that was a moving force behind his death.

5.8     Defendant Ellis County and its employees knew of the risk of harm that they were enhancing by failing to provide medical treatment and/or by delaying such treatment.

5.9     Defendant Ellis County's delay in providing medical treatment reflects deliberate indifference and reckless and conscious disregard for the obvious risk that made the violations of Plaintiff's constitutional rights, a reasonable probability.

5.10    As a direct and proximate cause of the incident as set forth herein, Mr. Wilson incurred extreme pain and mental anguish prior to his death for which he seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

**B.      Cause of action against Ellis County Correctional Officers John/Jane Does 1-5 and Ellis County Medical Staff John/Jane Does 1-5 under 42 U.S.C. §1983 for violating Mr. Wilson's 4th, 8th, and 14th Amendment Right to Medical Treatment.**

5.11    Ellis County correctional officers and medical staff (collectively, "John/Jane Does") wholly or substantially ignored Mr. Wilson's severe and life-threatening withdrawal symptoms and his obvious serious medical needs.  John/Jane Does were deliberately indifferent to Mr. Wilson's medical needs as indicated by facts including but not necessarily limited to its failure to train its employees and to properly treat Mr. Wilson.  Ellis County was aware of Mr. Wilson's severe and life-threatening withdrawal symptoms both as a result of Mr. Wilson's actions and speech and several communications from Mr. Wilson's family and close friends.  Ultimately, Does denied medical care to Mr. Wilson and failed to provide him with reasonable medical care.

5.12    Does were acting under color of state law and according to the official policy and custom of Ellis County, or lack of same.  John/Jane Does acts or omissions violated Mr. Wilson's constitutional rights and caused his death.

**C.      Cause of action against Captain Ogden pursuant to 42 U.S.C. § 1983 for violating Mr. Wilson's 4th, 8th, and 14th Amendment Right to Medical Treatment.**

5.13     Plaintiff would show that Captain Ogden failed to act as a reasonable officer would have acted in the same or similar circumstances and is liable for the correctional officers and medical staff's deliberate indifference as either their supervisor or as a bystander.  A claim of bystander liability requires the claimant to prove (1) the by-standing officer knew that a fellow officer was violating an individual's constitutional rights, and (2) the officer had a reasonable opportunity to prevent the violation but chose not to act. Supervisory liability requires a showing that the supervisor acted, or failed to act, with deliberate indifference to their subordinates' constitutional violations. Both supervisory and bystander liability under Section 1983 are based on the principle that, by choosing not to intervene and prevent an unconstitutional deprivation of medical care, the passive officer effectively participates in his fellow officer's acts.

5.14     Ogden had a reasonable opportunity to intervene to prevent the deliberate indifferent to Mr. Wilson and to order that Mr. Wilson receive the proper—or any—medical treatment for his known medical condition.  Ogden, however, simply stood by and let it happen.

5.15     By choosing not to intervene and prevent an unconstitutional deprivation of medical care, Ogden effectively participated in the correctional officers' and medical staff's acts.

5.16     Since at least 1995, it has been clearly established in the Fifth Circuit that an individual officer is subject to bystander liability under Section 1983 if he or she knew a constitutional violation was being committed by a fellow officer and had a reasonable opportunity to prevent the harm. *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (citing *Hale v. Townley*, 45 F.3d 914, 918 (5th Cir. 1995), for principle that "it was clearly established in the Fifth Circuit that an officer could be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm.").  Likewise, it

was clearly established at the time of the incident that a supervisor is subject to liability under Section 1983 where the supervisor, with deliberate indifference, failed to act or otherwise prevent the constitutional violations perpetrated by their subordinates. *See, e.g., Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

5.17    As a direct and proximate result of Ogden's failure to prevent the correctional officers' and medical staffs' violation of Mr. Wilson's constitutional rights, Mr. Wilson incurred extreme pain and injuries, and ultimately his death, for which his Estate and his surviving heirs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

**D.    Cause of Action Under 42 U.S.C. § 1983 for Violation of Mr. Wilson's 14th Amendment Right to Protection Due to the Special Relationship Between Him and the Defendants created by Mr. Wilson's Involuntary Confinement Against His Will Through the Affirmative Exercise of Ellis County's Power**

5.18    In the alternative, without waiving any procedural, contractual, statutory, or common-law right the Plaintiffs may have, without waiving any of the other causes of action herein, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, the Defendants are liable to the Plaintiffs for violating Mr. Wilson's right to protection due to the special relationship between Mr. Wilson and the Defendants created by Mr. Wilson's involuntary confinement.

5.19    Ellis County incarcerated Mr. Wilson against Mr. Wilson's will.  That incarceration created a special relationship whereby Ellis County owed a constitutional duty to Mr. Wilson to protect him from physical harm.  However, the Defendants' employees wholly or substantially ignored Mr. Wilson's severe and life-threatening withdrawal symptoms and his obvious serious medical needs. The Defendants were deliberately indifferent to Mr. Wilson's medical needs as indicated by facts including but not necessarily limited to its failure to train its employees and properly treat Mr. Wilson.   The Defendants were aware of Mr. Wilson's severe and life-threatening withdrawal

symptoms both as a result of Mr. Wilson's actions and speech and several communications from

Mr. Wilson's family and close friends.  Ultimately, the Defendants denied medical care to Mr.

Wilson and failed to provide him with reasonable medical care.

5.20    The Defendants' employees were acting under color of state law and according to the

official policy and custom of Ellis County, or lack of same.  The Defendants' actions caused one

or more Plaintiffs to suffer damages including but not necessarily limited to damages for violation

of Mr. Wilson's constitutional rights, physical pain, mental anguish, lost wages, funeral expenses,

attorneys' fees, and costs.

## VI.    DAMAGES

6.1    **Actual damages.**  Defendants' acts and/or omissions were a proximate cause and the

moving force behind the following actual damages suffered by the Plaintiffs and Defendants

should be held jointly and severally liable for the following damages:

   a.    **Estate of Jonathan Wilson (Survival Claim; Tex. Civ. Prac. & Rem. Code §71.021).**

      1.    Conscious pain and mental anguish suffered by Jonathan Wilson prior to his death; and

      2.    Funeral and burial expenses.

      3.    Exemplary Damages.

   b.    **A.W. (as wrongful death beneficiary of Jonathan Wilson); Tex. Civ. Prac. & Rem. Code §71.004).**

      1.    Mental anguish—the emotional pain, torment, and suffering experienced by A.W. because of the death of the death of his father, Jonathan Wilson — that A.W. sustained in the past and that he will, in reasonable probability, sustain in the future;

      2.    Loss of companionship and society—the loss of the positive benefits flowing from the love, comfort, companionship, and society that A.W. would have received from his father, Jonathan Wilson had he lived—that A.W. sustained in the past and that he will, in reasonable probability, sustain in the future;

3.      Pecuniary loss—loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that A.W. would have received from Jonathan Wilson had he lived—that A.W. sustained in the past and that he will, in reasonable probability will sustain in the future.

4.      Loss of inheritance—the loss of the present value of the assets that his father, Jonathan Wilson, in reasonable probability, would have added to the estate and left at natural death to A.W.

c.      **Jena Rasco (as wrongful death beneficiary of Jonathan Wilson); Tex. Civ. Prac. & Rem. Code §71.004).**

1.      Mental anguish—the emotional pain, torment, and suffering experienced by Jena Rasco because of the death of the death of her son, Jonathan Wilson—that Jena Rasco sustained in the past and that she will, in reasonable probability, sustain in the future;

2.      Loss of companionship and society—the loss of the positive benefits flowing from the love, comfort, companionship, and society that Jena Rasco would have received from her son, Jonathan Wilson had he lived—that Jena Rasco sustained in the past and that he will, in reasonable probability, sustain in the future;

3.      Pecuniary loss—loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Jena Rasco would have received from her son, Jonathan Wilson had he lived—that Jena Rasco sustained in the past and that she will, in reasonable probability will sustain in the future.

c.      **John Wilson (as wrongful death beneficiary of Jonathan Wilson); Tex. Civ. Prac. & Rem. Code §71.004).**

1.      Mental anguish—the emotional pain, torment, and suffering experienced by John Wilson because of the death of the death of his son, Jonathan Wilson—that John Wilson sustained in the past and that he will, in reasonable probability, sustain in the future;

2.      Loss of companionship and society—the loss of the positive benefits flowing from the love, comfort, companionship, and society that John Wilson would have received from her son, Jonathan Wilson had he lived—that John Wilson sustained in the past and that he will, in reasonable probability, sustain in the future;

3.      Pecuniary loss—loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that John Wilson would have received from his son, Jonathan Wilson had he lived—that John

Wilson sustained in the past and that he will, in reasonable probability will sustain in the future.

6.2     **Punitive/Exemplary Damages against Ellis County, Captain Ogden, and the Ellis County Correctional Officers and Medical Staff.**  Punitive/exemplary damages are recoverable under section 1983 when the conduct his shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.     Here, the conduct of Defendants was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of Mr. Wilson.  As such, Plaintiffs A.W. and the Estate of Jonathan Wilson request punitive and exemplary damages to deter this type of conduct in the future.

6.3     **Attorney's Fees.**  Reasonable and necessary attorney's fees and expert witness fees incurred by the Plaintiffs through trial, and reasonable and necessary attorney's fees that may be incurred by Plaintiffs for any post-trial proceedings, or appeal, interlocutory or otherwise, pursuant to 42 U.S.C. § 1988.

6.4     Prejudgment and postjudgment interest.

6.5     Costs of court.

## VII.     JURY DEMAND

7.1     The Plaintiffs demand a jury trial on all issues which may be tried to a jury.

## VIII.   PRAYER

8.1     Premises considered, the Plaintiffs ask that the Defendants be cited to appear and answer and that, upon final trial, the court enter judgment against the Defendants exceeding the minimum jurisdictional limit of this court:

     a.     Awarding the Plaintiffs damages against the Defendants for the Defendants' violation of the Plaintiffs' cause of action under 42 U.S.C. § 1983 for violation of

Mr. Wilson's 14th Amendment due process right to reasonable medical care;

b.     Awarding the Plaintiffs damages against the Defendants for the Defendants'
       violation of the Plaintiffs' cause of action under 42 U.S.C. § 1983 for violation of
       Mr. Wilson's 14th Amendment right to be free from state-created danger;

c.     Awarding the Plaintiffs damages against the Defendants for the Defendants'
       violation of the Plaintiffs' cause of action under 42 U.S.C. § 1983 for violation of
       Mr. Wilson's   14th Amendment right to protection due to the special relationship
       between him and the Defendants created by Mr. Wilson's involuntary confinement
       against his will through the affirmative exercise of Ellis County's power;

d.     Exemplary/punitive damages against all Defendants and in favor of Plaintiffs A.W.
       and the Estate of Jonathan Wilson to deter future conduct like this;

e.     Awarding the Plaintiffs all reasonable and necessary attorney's fees, costs, and
       expert witness fees available under law;

f.     Awarding the maximum pre-judgment and post-judgment interest allowed by law;
       and

g.     Awarding the Plaintiffs such other relief, legal and equitable, general and specific,
       to which he is entitled.

Respectfully submitted,

Charlie S. Reed
State Bar No. 24025608

REED LAW, PLLC
10100 N. Central Expressway, Suite 575
Dallas, Texas 75231
tel: 214.570.9555
fax: 214.570.9013
charlie@reed-law-firm.com

and

Thad D. Spalding
State Bar No. 00791708
tspalding@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000
(214) 946-8433 (fax)

*Attorneys for Plaintiff*